**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

VOX FUNDING LLC,

PLAINTIFF,

v.                                                          Case No. _____

THE BENNETT LAW GROUP LLC and MERIT BENNETT,

DEFENDANTS;

**NOTICE OF REMOVAL TO  THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

      **COME NOW** Defendants, The Bennett Law Group LLC and Merit Bennett (hereinafter "Defendants"), *pro se*, and hereby provide notice of removal of this matter to the United States District Court for the Western District of New York, as follows:

      1.      Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants hereby give notice of removal of all counts and claims asserted by the Plaintiff in the civil action filed in the Supreme Court of the State of New York, Kings County, styled: Vox Funding LLC v. The Bennett Law Group LLC and Merit Bennett; Index No. 511868/2024 (the "State Court Action").  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders available to Defendants The Bennett Law Group LLC and Merit Bennett, to date are attached hereto as **Exhibit A** (copy of the below-defined Complaint).

      2.      Plaintiff's original filing, (hereinafter the "Complaint"), was filed in the Supreme Court of the State of New York, Kings County, on April 26, 2024.  *See* **Exhibit A**.  Plaintiff has falsely asserted via Affidavit of Service filed on May 3, 2024, that service was appropriately

achieved by Plaintiffs via U.S. Postal Service post on April 29, 2024.  Therefore, this notice of removal is believed to be properly filed within the statutory deadline.

3.      Defendants state that this is an action of a civil nature in which the United States District Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is a complete diversity of citizenship between Plaintiff and all of the named Defendants.

4.      The Complaint asserts that the Complaint Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware and with offices at 100 Park Avenue 26th Floor, New York, New York 10017.  *See* **Exhibit A**, Complaint, ¶1.

5.      The Complaint falsely asserts that the Defendant The Bennett Law Group LLC is an entity organized under the law of the United States and authorized to do business in the State of New York.  *See* **Exhibit A**, Complaint. *See also* Affidavit of Merit Bennett attached hereto as **Exhibit B**.

6.      Defendants Merit Bennett and The Bennett Law Group LLC are actively, and have been since well before the subject transaction which gives rise the Plaintiff's Complaint, citizens of the State of New Mexico and have never been based nor doing business in New York.  Therefore, pursuant to 28 U.S.C. §§1332, 1441 and 1446, Defendants Merit Bennett and The Bennett Law Group LLC hereby give notice of removal to federal district court in New York of all counts and claims asserted by the Plaintiff in the civil action filed in the Supreme Court of the State of New York, Kings County, referenced fully above.

7.      Defendant The Bennett Law Group LLC is incorporated in New Mexico and has its principal place of business in Santa Fe County in the State of New Mexico.  *See* Articles of Incorporation and New Mexico Secretary of State Corporations and Business Services information

attached as **Exhibit C**.  Neither Defendant The Bennett Law Group LLC nor Defendant Merit Bennet

reside in nor do business in the State of New York.

8.      Defendant Merit Bennett is the sole member and owner of The Bennett Law Group,

LLC, and has been a resident of the State of New Mexico and doing business in New Mexico since

1986.  *See* The Bennett Law Group LLC New Mexico Operating Agreement <u>and</u> Defendant Merit

Bennett's New Mexico driver's license attached collectively as **Exhibit D**.

9.      Because of the clear diversity of citizenship that exists, Defendants are hereby seeking

removal and removing this matter to the United States District Court for the Western District of New

York.

10.      Further, this case involves a contractual dispute between Plaintiff and Defendants

where Plaintiff seeks judgment against Defendants in the sum of $76,488.75 (balance of $67,762.50,

the Default Fee of $6,776.25, the Blocking Fee of $1,000.00, the UCC fee of $150.00, the Returned

Item fee of $800.00), plus interest from December 14, 2023, costs and attorney's fees, the total of

which exceeds $75,000.00, causing this Court to have jurisdiction pursuant to 28 U.S.C. § 1332(a).

Furthermore, all related documents were executed by Defendant Bennett in New Mexico.

11.      Without admitting any of the foregoing allegations, Plaintiff alleges Defendants

breached the contract between the parties.

12.      The United States Supreme Court has clarified that "as specified in § 1446(a), **a

defendant's notice of removal need include only a plausible allegation that the amount in

controversy exceeds the jurisdictional threshold**.  Evidence establishing the amount is required

by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's

allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Emphasis supplied.

13.     Notice is hereby being provided to Plaintiff of the filing of this Notice as is required by 28 U.S.C. § 1446(d).

14.     A copy of this Notice will be filed with the Clerk for the Supreme Court of the State of New York, Kings County, as is required under 28 U.S.C. § 1446(d).

15.     When this Court grants removal, then, pursuant to FRCP Rule 38, the Defendants hereby demand a trial by jury of all triable issues.

**WHEREFORE**, the Defendants respectfully request that this action be removed from the Monroe County Supreme Court to this Court for all further proceedings.

THE BENNETT LAW GROUP LLC and
MERIT BENNETT, *PRO SE*

By: _____
Merit Bennett, *Pro Se*
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico  87505
Ph: 505-983-9834 | Fax: 505-983-9836
Email: mb@thebennettlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May 2024, a
true copy of the foregoing pleading was filed via U.S. Priority
mail as follows:

      US Western District of NY - Clerk's Office - Rochester
      2120 Kenneth B. Keating Federal Building
      100 State Street
      Rochester, New York 14614

       and

      Derek Medolla, Esq.
      Medolla Law, PLLC.
      1407 Broadway 29th Floor
      New York, New York 10018
      Ph: 646-863-9783
      *Attorney for Plaintiff*

 /s/ *Merit Bennett*
Merit Bennett, *Esq.*
*Pro Se*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Vox Funding LLC

                                        Plaintiff,

            -against-


The Bennett Law Group LLC and Merit Bennett

                                        Defendants

Index No.:

**SUMMONS**

Plaintiff designates **KINGS County** as
the place of trial

The basis of venue is:
The agreement between the parties

**TO THE ABOVE NAMED DEFENDANTS**:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on Plaintiff's Attorney within 20 days after the service of this summons, exclusive of
the date of service or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York; and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       April 24, 2024

                                        *Derek Medolla*
                                        Derek Medolla, Esq.
                                        Medolla Law, PLLC.
                                        1407 Broadway 29th Floor,
                                        New York, NY 10018
                                        (646)-863-9783

EXHIBIT A

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 04/26/2024

*__To Defendants' Addresses__*:
The Bennett Law Group LLC
460 Saint Michaels Dr
Santa Fe NM 87505

Merit Bennett
6 Avenida Aldea
Santa Fe NM 87507
Or
460 Saint Michaels Dr
Santa Fe NM 87505
Or
14 Ranchos Sin Vacas Rd
Santa Fe NM 87507

**EXHIBIT A**

RECEIVED NYSCEF: 04/26/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Vox Funding LLC

|                                | Index No.: |
| :----------------------------- | :--------- |

Plaintiff,

**VERIFIED COMPLAINT**

-against-

The Bennett Law Group LLC and Merit Bennett

Defendants

Plaintiff, Vox Funding LLC ("Plaintiff"), by and through its attorney, Derek Medolla, Esq., for its complaint herein against The Bennett Law Group LLC ("Business Defendant") and Merit Bennett ("Guarantor") (Business Defendant and Guarantor collectively known as "Defendants"), allege as follows:

## THE PARTIES

1. At all relevant times, Plaintiff was and is a limited liability company organized and existing under the laws of the State of Delaware and with offices at 100 Park Avenue 26th Floor New York NY 10017.

2. Upon information and belief and at all relevant times, Business Defendant was and is a limited liability company organized and existing under the laws of the State of New Mexico.

3. Upon information and belief, at all relevant times, Guarantor was and is an individual residing in the State of New Mexico.

4. Upon information and belief and at all relevant times, Guarantor is the owner and operator of Business Defendant.

EXHIBIT A

5. The Business Defendant and Defendant Guarantor have availed themselves of the jurisdiction of this Court by regularly conducting business in the State of New York and entering into the Agreement referenced below in the State of New York.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

6. Plaintiff repeats and realleges all allegations contained in paragraphs "1" through "5" above as though fully set forth herein at length.

7. On or about October 19, 2023, Plaintiff and Business Defendant entered into a Future Receivables Sale and Purchase Agreement (the "Agreement") wherein Business Defendant sold its future account- receivables having a face value of $76,450.00 (the "Purchased Amount") to Plaintiff to be paid to Plaintiff from a percentage of the Business Defendant's daily revenue (the "Specified Percentage") for the agreed upon purchase price of $55,000.00 (the "Purchase Price").

8. The Agreement is attached hereto as **Exhibit "A".**

9. Plaintiff remitted the purchase price for the future receivables to Business Defendant as agreed, thereby performing its obligations under the Agreement.

10. Pursuant to the Agreement, Business Defendant agreed to have one bank account approved by Plaintiff (the "Designated Bank Account") into which it would deposit all receivables and from which Business Defendant authorized Plaintiff to make ACH withdrawals until the purchased amount of receivables $76,450.00 was disbursed to Plaintiff in full.

11. On or about December 14, 2023 ("Default Date"), Business Defendant stopped remitting its receivables to Plaintiff and otherwise breached the Agreement by intentionally impeding and preventing Plaintiff from making the agreed upon ACH withdrawals from the bank

**EXHIBIT A**

account while conducting regular business operations and still in receipt of accounts-receivable. This is a default under the Agreement.

12. In the event of a breach, Business Defendant agreed that it would be liable to Plaintiff for the outstanding balance, plus a default fee in the amount of $5,000.00 or 10% of the undelivered amount sold ($6,776.25) whichever is greater (the "Default Fee") in addition to attorneys' fees, costs, and disbursements.

13. Moreover, in the event that Business Defendant prevented Plaintiff from making the agreed upon ACH withdrawals, Business Defendant agreed that it would be liable for an additional blocked account fee of $1,000.00 ("Blocking Fee").

14. In addition, Guarantor agreed to guarantee any and all amounts owed to Plaintiff from Business Defendant upon a breach in performance by Business Defendant.

15. Under the Agreement, Business Defendant also agreed to pay Plaintiff a UCC termination fee of $150.00 for fees associated with filing and releasing any UCCs against the Business Defendant ("UCC Fee").

16. Business Defendant remitted $8,687.50 worth of Future Receivables, leaving a balance of $67,762.50 (the "Balance"). The transaction history is attached hereto as **Exhibit "B".**

17. Despite due demand, Business Defendant has failed to remit the amounts due and owing by Business Defendant to Plaintiff under the Agreement and is therefore in breach of the Agreement.

18. Additionally, Guarantor is responsible for all amounts incurred as a result of any default by Business Defendant.

19. There remains a balance due in owing to Plaintiff on the Agreement in the amount of $67,762.50 plus interest, costs, fees, disbursements and attorney fees.

**EXHIBIT A**

RECEIVED NYSCEF: 04/26/2024

20. Pursuant to the Agreement Business Defendant authorized Plaintiff to charge an additional fee of $50.00 each time an electronic debit is returned, unpaid, or cannot be processed. During the course of the Agreement Business Defendant had sixteen (16) electronic payments that were returned unpayable to the Plaintiff, in all amounting to $800.00 in Returned Item Fees (Returned Item Fee). The ACH rejected transaction history is attached hereto as **Exhibit "C".**

<div align="center">

**AS AND FOR A FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

</div>

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "20" of this complaint as though fully set forth herein at length.

22. Plaintiff gave fair consideration to Business Defendant which was tendered for the right to receive the aforementioned receivables.

23. Upon information and belief, Business Defendant is still conducting regular business operations and still collecting receivables.

24. Business Defendant materially breached the Agreement without justification and right by failing the remit its receivables to Plaintiff as required under the Agreement.

25. Upon information and belief, Business Defendant has also materially breached the Agreement by using more than one depositing bank, an account which has not been approved by Plaintiff nor from which Plaintiff may make ACH debits.

26. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for breach of contract for $67,762.50 of future receivables, plus interest, costs, fees, disbursements and attorney fees.

<div align="center">

**AS AND FOR A SECOND CAUSE OF ACTION**
**(PERSONAL GUARANTEE)**

</div>

EXHIBIT A

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 04/26/2024

27. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "26" of this complaint as though fully set forth at length herein.

28. Pursuant to the Agreement, Guarantor personally guaranteed that Business Defendant would perform its obligations thereunder and that he or she would be personally liable for any loss suffered by Plaintiff because of a breach by Business Defendant.

29. Business Defendant has breached the Agreement as detailed above.

30. By reason of the foregoing, Plaintiff is entitled to a judgment against Guarantor based on his or her personal guarantee in the sum of $67,762.50, plus interest at the statutory rate from the Default Date through entry of judgment herein, costs, fees, disbursements and attorney fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### (ATTORNEYS' FEES AND COSTS)

31. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "30" of this complaint as though fully set forth at length herein.

32. The Agreement provides in addition to all payments owed under the Agreement, the Business Defendant agrees to pay all costs associated with a breach and the enforcement thereof, including, but not limited to, court costs and attorneys' fees and disbursements.

33. Defendant Personal Guarantor agreed to pay costs, expenses and attorneys' fees which may be incurred as a result of the Seller's default under the Agreement.

34. Plaintiff has incurred and continues to incur expenses including attorneys' fees, which cannot be finally determined at this date, but which will be capable of determination at such time as judgment may be entered herein.

**EXHIBIT A**

NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 04/26/2024

35. By reason of the foregoing, the Defendants are liable to Plaintiff for Plaintiff's expenses in regard to this litigation, including attorneys' fees, in such amount as may be determined.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (CONVERSION)

36. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "35" above as though fully set forth herein at length.

37. Plaintiff is the sole, lawful, and exclusive owner of the Balance.

38. Plaintiff has not authorized Business Defendant or any other entity to possess the Balance.

39. Business Defendant is unlawfully in possession of the Balance.

40. Business Defendant has deprived Plaintiff of its use and enjoyment of the Balance.

41. Business Defendant has comingled the Balance with its operating funds.

42. Therefore, the Business Defendant is liable to Plaintiff for the Balance plus interest at the statutory rate from the Default Date, through the entry of judgment herein.

**THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

**EXHIBIT A**

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 04/26/2024

**WHEREFORE**, Plaintiff Vox Funding LLC demands judgment against Defendants The Bennett Law Group LLC and Merit Bennett, jointly and severally, for the balance of $67,762.50, the Default Fee of $6,776.25, the Blocking Fee of $1,000.00, the UCC fee of $150.00, the Returned Item fee of $800.00, plus interest at the statutory interest rate from Date of Default December 14, 2023, through entry of judgment herein, as well as Plaintiff's Attorneys' fees, costs and expenses incurred in prosecuting this action in an amount to be determined by the Court and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 24, 2024

*Derek Medolla*
Derek Medolla, Esq.
Medolla Law, PLLC.
1407 Broadway 29th Floor,
New York, NY 10018
(646)-863-9783

**EXHIBIT A**

### VERIFICATION

STATE OF NEW YORK

COUNTY OF NEW YORK

Louis Calderone, being duly sworn, hereby deposes and states the following:

I am over the age of 18 and reside in the State of New York. My position with Vox

Funding LLC is President, and as such, I am fully familiar with the facts and circumstances

stated herein. I am authorized to make this verification on behalf of Vox Funding LLC. I have

read the foregoing Verified Complaint and know the contents thereof. The same is true to my

knowledge, except as to the matters therein stated to be alleged upon information and belief. And

as to those matters, I believe them to be true.

Louis Calderone

Sworn to me before this:

24 day, of April , 2024

Notary

William O. Clyne
Notary Public, State of New York
No. 01CL6379910
Qualified in New York County
Commission Expires August 27, 2026

10 of 12

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| Vox Funding LLC | Index No.: |
| Plaintiff, | |
| -against- | |
| The Bennett Law Group LLC and Merit Bennett | |
| Defendants | |

## NOTICE REGARDING AVAILABILITY OF ELECTRONIC FILING SUPREME COURT CASES

PLEASE TAKE NOTICE that plaintiff(s) / petitioner(s) [defendant(s) /respondent(s)] in the case captioned above intends that this matter proceed as an electronically-filed case in the New York State Courts Electronic Filing System ("NYSCEF") in accordance with the procedures therefore, set forth in Uniform Rule 202.5-b and described below. Under that Rule, filing and service of papers by electronic means cannot be made by a party nor can electronic service be made upon a party unless that party has consented to use of the System for the case in question. Within ten (10) days after service of this Notice, each party served should indicate whether or not it consents to electronic filing and service through NYSCEF for this case. (See Instruction #2 below).

### General Information

Electronic filing offers significant benefits for attorneys and litigants, permitting documents to be filed with the County Clerk and the court and served, between or among consenting parties, by posting the documents on the NYSCEF website, which can be done at any time of the day or night on any day of the week. There is no fee to use the NYSCEF System, whether for filing, service, or consultation of the electronic docket, nor is there a charge to print

**EXHIBIT A**

RECEIVED NYSCEF: 04/26/2024

documents from the docket. Normal filing fees must be paid, but this can be done by credit card

or debit card on-line. For additional procedures and information, see Uniform Rule 202.5-b, any

e-filing protocol that may have been promulgated by the court in question, and the NYSCEF

Website at www.nycourts.gov/efile.

### Instructions

1. Service of this Notice constitutes consent to e-filing and a statement of intent by the undersigned to use the NYSCEF System in this case. When an action or proceeding is being commenced through the NYSCEF System, this Notice must accompany Defendant service of the initiating papers.

2. **Within ten (10) days after service of this Notice**, the party served should consent to e-filing either: (i) by filing with the court and serving on all parties of record a consent to e-filing, or (ii) if the party or attorney of record is an authorized e-filing user, by filing the consent electronically in the manner provided at the NYSCEF site. If one party or some but fewer than all parties consent, NYSCEF may be used by and between or among consenting parties.

3. Each participating attorney, unless already registered, or self-represented party must **PROMPTLY** complete a Filing User Registration form (see the "Forms" section of the Website) and submit it to the NYSCEF Resource Center (efile@courts.state.ny.us) in order to obtain the confidential Filing User Identification Number and Password necessary to use the system.

4. For additional information about NYSCEF, see the *User's Manual* and *Frequently Asked Questions* on the Website, or contact the court in question or the NYSCEF Resource Center (at 646-386-3033 efile@courts.state.ny.us).

Dated: New York, New York
       April 24, 2024

*Derek Medolla*

Derek Medolla, Esq.
Medolla Law, PLLC.
1407 Broadway 29th Floor,
New York, NY 10018
(646)-863-9783

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

VOX FUNDING LLC,

            PLAINTIFF,

v.                                         Case No. _____

THE BENNETT LAW GROUP LLC and MERIT BENNETT,

            DEFENDANTS;

**AFFIDAVIT OF MERIT BENNETT IN SUPPORT OF**
**AMENDED NOTICE OF REMOVAL TO FEDERAL COURT**

I, Merit Bennett, hereby declare as follows:

      1.      I am an attorney admitted to practice in New Mexico, and I reside in the State of New Mexico - and have so resided there since 1986. I am <u>not</u> admitted to practice in the State of New York and have <u>never</u> resided <u>nor</u> done <u>any</u> business there.

      2.      I am acting as counsel *pro se* for myself and my solely-owned law firm, The Bennett Law Group LLC, a limited liability company.

      3.      I have personal knowledge, based upon information and belief, of all of the facts set forth in the Amended Notice of Removal to Federal Court filed herewith, and those facts are true and correct, and, for those facts that are not personally known to me, they are offered on information and belief from supporting documentation which I believe to be true and accurate.

      4.      I am the sole member and owner of The Bennett Law Group, LLC, a New Mexico Limited Liability Company, and I have been a resident of the State of New Mexico and doing business in New Mexico since 1986.

**EXHIBIT B**

5.     This Affidavit is made in support of the Notice of Removal to Federal Court filed

herewith.

6.     I declare under penalty of perjury under the laws of the State of New Mexico that the

foregoing is true and correct to the best of my knowledge and belief, and that this Affidavit was

executed at Santa Fe, New Mexico.

DATED: May 15, 2024.

<div align="right">

THE BENNETT LAW GROUP LLC and
MERIT BENNETT, *PRO SE*

Merit Bennett, *Esq.*

</div>

STATE OF NEW MEXICO    )
                                          ) ss
COUNTY OF SANTA FE     )

ACKNOWLEDGED before me the 15th day of ___MAY___ 2024, by Merit Bennett.

Notary Public

My Commission Expires: 04/07/2027

| |
|---|
| STATE OF NEW MEXICO<br>NOTARY PUBLIC<br>DONNA M. VALDES<br>COMMISSION # 1110179<br>COMMISSION EXPIRES 04/07/2027 |

**EXHIBIT B**



**New Mexico**
**Secretary of State**
325 Don Gaspar, Suite 300 · Santa Fe, NM 87501
(800) 477-3632 · www.sos.state.nm.us



**SUBMIT ORIGINAL AND A COPY**
**TYPE OR PRINT LEGIBLY**

### Limited Liability Company
### ARTICLES OF ORGANIZATION

The undersigned, acting as organizer(s) of a limited liability company pursuant to the New Mexico Limited Liability Company Act, adopt the following Articles of Organization:

**ARTICLE ONE**: The name of the limited liability company is: _____

THE BENNETT LAW GROUP LLC

**ARTICLE TWO**: The period of duration (if other than perpetual) is: _N/A_

**ARTICLE THREE:**
(1) The New Mexico street address of the company's initial registered office is:
933 CALLE DAVID, SANTA FE, NM 87505
**(P.O. Box is not acceptable. Provide a description of the geographical location if a street address does not exist.)**

(2) The name of the initial registered agent at that address is: DORI BENNETT

(3) The street address of the company's principal place of business, if different from its registered office, is:
460 ST. MICHAEL'S DRIVE #704, SANTA FE, NM 87505

**ARTICLE FOUR** (check only if applicable):
_____YES Management of the business and affairs of the company is vested in a manager.

**ARTICLE FIVE** (check only if applicable):
_✗_YES The limited liability company is a single member limited liability company.

**ARTICLE SIX**: If these Articles of Organization are not to be effective upon filing with the commission, the effective date is: *(if an effective date is specified here, it cannot be a date prior to the date the articles are received by the commission)* _N/A_

Dated: _12/17/13_

_Dori Bennett_                    DORI BENNETT

_____    _____
**Signature of Organizer(s)**     **Printed Name(s)**

**Form DLLC**
(revised 06/13)

**EXHIBIT C**



## Corporations and Business Services
### New Mexico Secretary of State

HOME

## Search Information

🏠Home

### Entity Details

| | | | |
|---|---|---|---|
| Business ID#: | **4845730** | Status: | **Active** |
| Entity Name: | **THE BENNETT LAW GROUP LLC** | Standing: | **Good Standing** |
| DBA Name: | **Not Applicable** | | |

### Entity Type and State of Domicile

| | | | |
|---|---|---|---|
| Entity Type: | **Domestic Limited Liability Company** | State of Incorporation: | **New Mexico** |
| Statute Law Code: | **53-19-1 to 53-19-74** | | |

### Formation Dates 

### Reporting Information 

### Period of Existence and Purpose and Character of Affairs 

### Outstanding Items

Not Applicable

**Registered Agent:**

No Records Found.

**License:**

No Records Found.

### Contact Information

| | |
|---|---|
| Mailing Address: | |
| Principal Place of Business Anywhere: | **460 ST. MICHAEL'S DRIVE #704, SANTA FE, NM 87505** |
| Secondary Principal Place of Business Anywhere: | |
| Principal Office Outside of New Mexico: | **Not Applicable** |
| Registered Office in State of Incorporation: | |

**EXHIBIT C**

| | |
|---|---|
| Principal Place of Business in Domestic State/ Country: | **Not Applicable** |
| Principal Office Location in NM: | **Not Applicable** |

## Registered Agent Information

| | |
|---|---|
| Name: | **DORI BENNETT** |
| Geographical Location Address: | |

| | | | |
|---|---|---|---|
| Physical Address: | **460 ST. MICHAELS DR #703, SANTA FE, NM 87505** | Mailing Address: | **NONE** |
| Date of Appointment: | **11/23/2015** | Effective Date of Resignation: | |

## Director Information

**Not Applicable**

## Officer Information

**Not Applicable**

## Manager Information

No Records to View.

## Member Information

No Records to View.

## Organizer Information

| Title | Name | Address |
|---|---|---|
| Organizer | DORI BENNETT | NM |

## Incorporator Information

**Not Applicable**

## Trustee Information

**Not Applicable**

**EXHIBIT C**

Corporations Division

**Filing History** 

**License History**

[Back] [Entity Name History] [Return to Search]

**EXHIBIT C**

**OPERATING AGREEMENT OF**
THE BENNETT LAW GROUP, LLC
**A New Mexico Limited Liability Company**

**ARTICLE I**
**DEFINITIONS**

1.01    The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

THE BENNETT LAW GROUP LLC

(a)    "Articles of Organization" shall mean the Articles of Organization of, (TBLGLLC LLC as filed with the New Mexico Secretary of State as the same may be amended from time to time.

(b)    "Capital Account" as of any given date shall mean the capital account to be established and maintained for each Member in accordance with Article V.

(c)    "Capital Contribution" shall mean the Initial Capital Contribution and any additional contribution to the capital of the Company in cash or property by a Member subsequent to entry into this Operating Agreement. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to Section 5.01 of this Operating Agreement.

(d)    "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

THE BENNETT LAW GROUP
(e)    "Company" shall refer to LLC (TBLGLLC).

(f)    "Deficit Capital Account" shall mean with respect to any Member the deficit balance, if any, in such Member's Capital Account as of the end of the taxable year.

(g)    "Fiscal Year" shall mean the Company's fiscal and taxable year, which shall be the calendar year.

(h)    "Limited Liability Company Interest" or "L.L.C. Interest" shall mean a Member's or L.L.C. Interest Owner's right to receive a share of distributions, assets, and a return of capital, if any, from the Company, pursuant to this Operating Agreement and the New Mexico Act, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members.

(i)    "L.L.C. Interest Owner" shall mean the assignee or owner of an L.L.C. Interest who is not a Member.

(j)    "Member" shall mean each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become

**EXHIBIT D**

Members. The sole initial Member of the Company is BENNETT MERIT

(k)   "Membership Interest" shall mean a Member's interest in the Company including such Member's L.L.C. Interest and the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement and the New Mexico Act.

(l)   "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the accounting methods followed by the Company for income tax purposes.

(m)   "New Mexico Act" shall mean the New Mexico Limited Liability Company Act, as amended from time to time.

(n)   "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

(o)   "Persons" shall mean any individual or entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

(p)   "Reserves" shall mean, with respect to any fiscal period, funds set aside or amounts allocated during such period to reserves which shall be maintained in amounts deemed sufficient by the Members for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the Company's business.

(q)   "Treasury Regulations" shall include proposed, temporary and final regulations promulgated under the Code in effect as of the date of filing the Articles of Organization and any regulations subsequently issued.

## ARTICLE II
## FORMATION OF COMPANY

2.01   Name.  The name of the Company is , LLC

2.02   Formation.  On 12/17/13 DORI BENNETT organized this New Mexico Limited Liability Company by executing and delivering Articles of Organization to the New Mexico Secretary of State in accordance with and pursuant to the New Mexico Act.

2.03   Principal Place of Business.  The principal place of business of the Company within the State of New Mexico shall be _____.  The Company may locate its places of business and registered office at any other place or places as the Members may from time to time deem advisable.
⌐ 460 ST. MICHAEL'S DRIVE, STE. 703
² SANTA FE, NM 87505

Operating Agreement/
, LLC

**EXHIBIT D**

460 ST. MICHAELS DRIVE, STE 703
SANTA FE, NM 87505

2.04   Registered Office and Registered Agent. The Company's initial registered office shall be _____ and its registered agent at such address shall be MERIT BENNETT   The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new registered agent with the New Mexico Secretary of State pursuant to the New Mexico Act.

2.05   Term. The duration of existence of the Company shall be perpetual, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the New Mexico Act.

### ARTICLE III
### BUSINESS OF COMPANY

3.01   Permitted Businesses. The business of the Company shall be:

(a)   To PRACTICE LAW and to do any other acts whatsoever deemed proper or convenient in connection with the foregoing purposes, and to invest in other financial endeavors as may be desirable to increase the capital or earnings of the Company;

(b)   To accomplish any lawful business or purpose whatsoever, which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets; and

(c)   To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the New Mexico Act.

The Company shall engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

### ARTICLE IV
### MEMBERS

4.01   The names and addresses of the Members and their initial Membership Interests are as follows:

MERIT BENNETT
6 AVENIDA ALDEA
SANTA FE, NM 87507
(100 % INTEREST)

3

Operating Agreement/
, LLC

**EXHIBIT D**

Member & Address                                    Membership Interest

MERIT BENNETT, 6 AVENIDA ALDEA             100%
            SANTA FE, NM 87507

## ARTICLE V
## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

5.01   Initial Contributions.

Upon execution of this Agreement, the Member shall deposit the sum of $100 in the Company account to be established pursuant to the provisions of Section 5.02 below in consideration for its Membership Interest. This amount shall be credited to the Member's capital account as established by Section 5.02 below. Contributions to the capital of the Company shall not bear interest in favor of the contributor.

5.02   Capital Accounts.

(a)   A separate capital account will be maintained for each Member. The initial capital account of the Member shall be as set forth in Section 5.01. Subsequently, each Member's Capital Account will be increased or decreased in accordance with the Code, the Treasury Regulations and other applicable law.

(b)   No Member shall withdraw any part of his or her capital account except as provided in this Agreement.

.   5.03   Additional Funds.   In the event that the initial capital contributions to the Company are insufficient to pay the costs and expenses of the Company in operating its business, the Member may, but shall not be required to, contribute additional funds to the Company.

5.04   Loans to Company.   If the actual or anticipated expenses of the Company in connection with the Company business exceed the available cash of the Company, the Member may, either by making cash loans himself or by obtaining loans from other persons, make available to the Company such sums as shall equal the excess. Such loans shall bear interest at the simple rate of ten percent (10%) per annum, or at a rate equal to the rate paid by the Member to obtain such loan plus two (2) points, whichever is greater.

## ARTICLE VI
## ALLOCATIONS, INCOME TAX, DISTRIBUTIONS, ELECTIONS AND REPORTS

6.01   Allocations of Profits and Losses.   Net Profits and Net Losses will be allocated to the Members in proportion to their Membership Interests and in accordance with the Code, the Treasury Regulations and other applicable law.

4

**Operating Agreement/**
**, LLC**

EXHIBIT D

6.02.   Distributions.

(a)   For the purposes of this Agreement, "available cash" of the Company for any period shall mean the aggregate of cash revenues received by the Company during such period from all sources whatsoever, as reduced by the liabilities of the Company incurred during such period in the conduct of the Company business, and as reduced by such amounts as approved by the Member to provide for any future or contingent or unforeseen expenditures or liabilities of the Company.

(b)   Available cash shall be distributed among the Members or L.L.C. Interest Owners in accordance with their respective Membership Interests or L.L.C. Interests in the Company, at such times, and from time to time, as the Member shall determine.

(c)   For the purposes of this Agreement, any amount of taxes required to be withheld by the Company with respect to any amount distributable to any Member shall be deemed to be a distribution or payment to such Member and shall reduce the amount otherwise distributable to such Member pursuant to this Agreement. Any amount of taxes required to be withheld by the Company with respect to any Member that is not described in the foregoing sentence shall be deemed to be a loan to such Member and shall be repaid by the Member to the Company with interest at simple rate of ten percent (10%).

## ARTICLE VII
## RIGHTS AND DUTIES OF MEMBERS

7.01   Management.   MERIT BENNETT is the Managing Member of the Company. Except as required by nonwaivable provisions of applicable law, the Managing Member shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. Any person may rely upon the signature of the Managing Member upon any document as binding upon the Company. In the event that the Managing Member is unable to perform its duties under this Agreement, the Managing Member shall appoint an individual as acting Manager of the Company.   If the Managing Member is unable to do so, DORI BENNETT shall act as the acting Manager of the Company, or, if she is unable or unwilling to serve, the Managing Member's duly appointed administrator, or legal representative shall appoint an acting Manager of the Company.

7.02   Members Not Authorized.   Unless authorized to do so by the Member of the Company in writing, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose, to execute documents in the name of the Company or have any authority to bind the Company unless such person has been authorized by the Member in writing to act as an agent of the Company.

5

Operating Agreement/
, LLC

**EXHIBIT D**

7.03     Limitation of Liability.  The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debt, obligations and liabilities of the Company and not of the Members or any Member.  Each Member's liability shall be limited as set forth in this Operating Agreement, the New Mexico Act and other applicable law.

7.04     Liability for Certain Acts.  Each Member shall perform his duties in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.    A Member who so performs the duties as Member shall not have any liability by reason of being or having been a Member of the Company.  A Member does not, in any way, guarantee the return of the Members' Capital Contributions or a profit for the Members from the operations of the Company or assume fiduciary duties to the Company.

7.05     Liability of a Member for Improper Distribution.  A Member who votes for, approves or consents to any distribution that violates any provision of this Operating Agreement or the New Mexico Act shall be liable to the Company jointly, but not severally, with all other Members or Members so voting, approving or consenting, for the amount of the distribution that exceeds what could have been distributed without violating the New Mexico Act or this Operating Agreement, unless 1) the Member based his determination that the distribution did not violate such provisions on a) financial statements prepared on the basis of accounting practices and principles that were reasonable under the circumstances or b) any other valuation method that was reasonable under the circumstances, and 2) the Member had no actual knowledge that rendered his reliance on such statements, valuation or method to be unwarranted.

7.06     Members Have No Exclusive Duty to Company.  The Member shall not be required to manage the Company as his sole and exclusive function and any Member may have other business interests and may engage in other activities in addition to those relating to the Company.  A Member shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture, and the other Members shall not have the right to participate in such business or venture solely by virtue of this Agreement

7.07     Indemnity of Members.     The Company shall indemnify the Members for judgments, settlements, penalties, fines or expenses incurred in a proceeding to which such person is a party because they are or were a Member, and shall indemnify such Member for advancement of expenses, including costs of defense, prior to final disposition of such proceeding.

7.08     Certificates of Membership Interest.  A Member's Membership Interest in the Company may be evidenced by a Certificate of Membership Interest issued by the Company, which interest shall not be transferrable except as set forth herein.  Upon written request of any Member, the Company shall provide a list showing the names, addresses and Membership Interests of all Members.

6

EXHIBIT D

7.09   No Priority and Return of Capital.   Except as set forth herein, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or Company distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.

## ARTICLE VIII
## TRANSFERABILITY OF MEMBERSHIP INTEREST

8.01   Invalidity of Transfers.   No transfer of all or any part of a Membership Interest or an L.L.C. Interest in the Company by a Member or an L.L.C. Interest Holder shall be valid unless the transfer is a permitted transfer as provided under the terms of this Agreement.

8.02   Definition of Transfer .   "Transfer" means any sale, gift, exchange, pledge, sale by legal process under execution, or change in ownership, legal or beneficial, voluntary or involuntary, because of any act or occurrence. A change in ownership of a Membership Interest or an L.L.C. Interest as a result of a foreclosure or other default on a pledge by Member shall constitute a separate transfer of that Membership Interest or L.L.C. Interest which is subject to the provisions of Article VIII.

8.03   Permitted Transfers .   Any transfer of a Membership Interest or an L.L.C. Interest of the Company shall be a permitted transfer if the Member consents in writing to the specific transfer.

8.04   Attempted Transfers in Violation of Transfer Restrictions.   An attempt to transfer a Membership Interest or a L.L.C. interest in the Company in violation of this Article shall be ineffective and the Company shall refuse to recognize the Transfer.

8.05   Binding on Transferee.   In the event of a Transfer of the Selling Member's interest in the Company and as a condition to recognizing the effectiveness and binding nature of any such Transfer, the Member may require the proposed transferee to execute, acknowledge and deliver such instruments of transfer, assignment and assumption and such other certificates, representations and documents, and to perform all such other acts which the Member may deem necessary or desirable to:

(a) constitute such transferee as a Member;

(b) confirm that the person desiring to acquire an interest or interests in the Company, or to be admitted as a Member, has accepted, assumed and agreed to be subject and bound by all of the terms, obligations and conditions of the Operating Agreement, as the same may have been further amended (whether such person is to be admitted as a new Member or will merely be a L.L.C. Interest Owner);

(c) preserve the Company after the completion of such sale, transfer, assignment, or substitution under the laws of each jurisdiction in which the Company is qualified, organized

7

Operating Agreement/
, LLC

**EXHIBIT D**

or does business;

(d)    assure compliance with any applicable state and federal laws including securities laws and regulations.

## ARTICLE IX
## ADDITIONAL MEMBERS

9.01    The Member may admit to the Company additional Members(s) who will participate in the profits, losses, available cash flow and ownership of the assets of the Company on such terms as are determined by all of the Members. Admission of any such Additional Member(s) shall require the written consent of all Members then having any Membership Interest in the Company. Such Additional Members shall be allocated gain, loss, income or expense by such method as may be provided in this Agreement, and if no method is specified, then as may be permitted by the Code.

## ARTICLE X
## DISSOLUTION AND DETERMINATION

10.01    Dissolution.

(a)    The Company shall be dissolved upon the occurrence of any of the following events:

(i)    by the written agreement of the Members holding 100% of the Membership Interests; or

(ii)    upon the expulsion, bankruptcy, resignation, removal, dissolution, termination or voluntary withdrawal which terminates the continued Membership Interest of a Member in the Company (a "Withdrawal Event"), unless the business of the Company is continued by the unanimous written consent of the Member's successor, assign, administrator, liquidating trustee or other legal representative within 90 days after the Withdrawal Event. Such person may designate a third party or entity to acquire the departing Member's Membership Interest.

(b)    As soon as possible following the occurrence of any of the events specified in this Section effecting the dissolution of the Company, the appropriate representative of the Company shall execute the Articles of Dissolution in such form as shall be prescribed by the New Mexico Secretary of State and the New Mexico Act, and shall file the same with that Secretary.

10.02    Winding Up, Liquidation and Distribution of Assets.

(a) Upon the filing of the Articles of Dissolution with the New Mexico Secretary

8

Operating Agreement/
, LLC

EXHIBIT D

of State, the Company shall cease to carry on its business. Upon dissolution of the Company, the Company shall not terminate, but shall cease to engage in further business, except to the extent necessary to perform existing contracts, and shall wind up its affairs and liquidate its assets. A proper accounting shall be made from the date of the last previous accounting to the date of dissolution. During the course of liquidation, the Company shall continue to share profits and bear losses as provided herein, and all of the provisions of this Agreement shall continue to bind the Members and apply to the activities of the Company except as specifically provided to the contrary, but there shall be no cash distributions to the Members until all of the assets of the Company have been liquidated and all of the liabilities of the Company have been paid, discharged, satisfied, or otherwise adequately provided for, at which time the total cash proceeds from the liquidation of the Company shall be distributed to the Members as set forth below.

(b)     All proceeds from liquidation shall be distributed in the following order of priority:

(i)     to the payment of debts and liabilities of the Company and the expenses of liquidation;

(ii)    to the setting up of such reserves as the Members may reasonably deem necessary for any contingent liabilities of the Company;

(iii)   to the repayment of any loans made to the Company by any Member pursuant to Article V above, including accrued interest, not previously repaid;

(iv)    to the Members and L.L.C. Interest Owners as follows: (a) first, to the Members and L.L.C. Interest Owners in accordance with the relative remaining positive balances in their respective capital accounts until the capital accounts of all Members and L.L.C. Interest Owners have been reduced to zero; (b) any remaining funds between the Members and L.L.C. Interest Owners in proportion to their respective percentage interest in the Company; and

(v)     The distribution on liquidation shall be subject to the following: (a) The Company's assets may be distributed in kind to the Members and L.L.C. Interest Owners; and (b) Should a Member or L.L.C. Interest Owner have a negative balance in its capital account, whether by reason of losses in liquidating Company assets or otherwise, the debit balance shall represent an obligation from said Member or L.L.C. Interest Owner to the Company, to be paid in cash within thirty (30) days after written demand by the Company.

(c)     Upon completion of the dissolution, winding up, liquidation, and distribution of the liquidation proceeds, the Company shall terminate.

(d)     The Members shall comply with any applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

9

Operating Agreement/
, LLC

**EXHIBIT D**

(e)     The Company may offset damages for breach of this Operating Agreement by a Member or L.L.C. Interest owner whose interest is liquidated (either upon the withdrawal of the Member or the liquidation of the Company) against the amount otherwise distributable to such Member.

## ARTICLE XI
## AMENDMENTS

11.01 This Operating Agreement may not be amended except by the unanimous consent of the Members.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.01 Notices. Any notice, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be deemed to have been sufficiently given or served for all purposes if (i) delivered personally to the party or to an executive officer of the party to whom the same is directed or, (ii) sent by registered or certified mail, postage and charges prepaid, addressed to the Member's and/or Company's address, as appropriate, which is set forth in this Operating Agreement or (iii) delivered electronically by facsimile machine. Except as otherwise provided herein, any such notice shall be deemed to be given three business days after the date on which the same was deposited in the United States mail, addressed and sent as aforesaid, or upon delivery if delivered personally or electronically.

12.02 Books of Account and Records. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Members or their designees in which shall be entered fully and accurately all transactions and other matters relating to the Company's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Company. Such books and records shall be at all times maintained at the principal executive office of the Company or such other location approved by the Members and shall be open to the reasonable inspection and examination of the Members or L.L.C. Interest Owners or their duly authorized representatives during reasonable business hours. At a minimum, the Company shall keep the following records:

(a) A current list of the full name and last known business, residence, or mailing address of each Member both past and present;

(b) A copy of the Articles of Organization of the Company and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed; timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year.

10

**Operating Agreement/**
**, LLC**

**EXHIBIT D**

12.03. Application of New Mexico Law. This Operating Agreement and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of New Mexico, and specifically the New Mexico Act.

12.04 Waiver of Action for Partition. Each Member and L.L.C. Interest Owner irrevocably waives during the term of the Company any right that it may have to maintain any action for partition with respect to the property of the Company.

12.05 Execution of Additional Instruments. Each Member hereby agrees to execute such other and further statements of interests and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations related to the business of the Company.

12.06 Construction. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

12.07 Headings. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

12.08 Waivers. The failure of any party to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not constitute a waiver of any subsequent violation of this Agreement.

12.09 Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

12.10 Severability. If any provision of this Operating Agreement or the application thereof to any person of circumstances shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

12.11 Heirs, Successors and Assigns. Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors and assigns.

12.12 Creditors. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

12.13 Investment Representations. The undersigned Member understands (1) that the

11

Operating Agreement/
, LLC

**EXHIBIT D**

Membership Interests and L.L.C. Interests evidenced by this Operating Agreement have not been registered under the Securities Act of 1933, the New Mexico Securities Act or any other state securities laws (the "Securities Acts") because the Company is issuing these Membership Interests and L.L.C. Interests in reliance upon the exemptions from the registrations requirements of the Securities Act providing for issuance of securities not involving a public offering, (2) that the Company has relied upon the fact that the Membership Interests and L.L.C. Interests are to be held by each Member and L.L.C. Interest Owner for investment, and (3) that exemption from registrations under the Securities Acts would not be available if the Membership Interests and L.L.C. Interests were acquired by a Member with a view to distribution. Accordingly, each Member and L.L.C. Interest Owner hereby confirms to the Company that such Member and L.L.C. Interest Owner is acquiring the Membership Interests and L.L.C. Interests for such own Member's and L.L.C. Interest Owners' account, for investment and not with a view to the resale or distribution thereof.

**CERTIFICATE**

The undersigned hereby agree, acknowledge and certify that the foregoing Operating Agreement constitutes the Operating Agreement of ~~, LLC~~ TBLGLLC adopted by the Member of the Company as of 12/17/13.

MEMBER:

[signature]

**EXHIBIT D**

